1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   PENNIE ROPER, individually and on          No. 1:19-cv-00406-DAD-BAM
     behalf of all others similarly situated,
12
                      Plaintiff,
13                                               ORDER GRANTING IN PART AND
            v.                                   DENYING IN PART MOTION TO DISMISS
14
     BIG HEART PET BRANDS, INC.,                 (Doc. No. 13)
15
                      Defendant.
16

17

18          This matter is before the court on defendant's motion (Doc. No. 13) to dismiss plaintiff's

19   complaint.  (Doc. No. 1)  A hearing on that motion was held on August 20, 2019.  (Doc. No. 25.)

20   Attorney Ronald Rothstein appeared telephonically on behalf of defendant and attorneys Michael

21   Reese and Benjamin Heikali appeared telephonically on behalf of plaintiff and the proposed class.

22   (*Id.*)  For the reasons explained below, the court will grant in part and deny in part defendant's

23   motion to dismiss.[1]

24   /////

25   ───────────────────────
     [1] The undersigned apologizes for the excessive delay in the issuance of this order.  This court's
26   overwhelming caseload has been well publicized and the long-standing lack of judicial resources
     in this district has reached crisis proportion.  Unfortunately, that situation sometimes results in the
27   court not being able to issue orders in submitted civil matters within an acceptable period of time.
     This situation is frustrating to the court, which fully realizes how incredibly frustrating it is to the
28   parties and their counsel.

                                                     1

**BACKGROUND**

Plaintiff Pennie Roper originally filed her complaint in Stanislaus County Superior Court on February 13, 2019.  (*Id*., Ex. 1 ("Compl.").)  Therein, plaintiff alleges the following: Defendant Big Heart Pet Brands, Inc. has labeled and advertised a series of products ("Products") with the representations "All Natural."  (Compl. at ¶ 2.)  However, the Products allegedly contain non-natural, artificial, and synthetic ingredients including sodium tripolyphosphate ("STPP"), synthetic vitamins and minerals, citric acid, and lactic acid.  (*Id*. at ¶ 4.)  Plaintiff and other consumers relied on defendant's natural representations when purchasing the products and would have either not purchased them or paid significantly less.  (*Id*. at ¶ 6.)  At all relevant times, defendant made the natural representations because consumers "perceive all natural foods as better, healthier, and more wholesome."  (*Id*. at ¶ 22.)  Defendant knew what representations it made about the Products and knew what ingredients were added to them since it "formulated and manufactured, or oversaw the formulation and manufacturing of, the Products and then listed all the Products' ingredients on the packaging."  (*Id*. at ¶ 24.)  The Products are governed by federal regulations that control the labeling of the Products, and some of the ingredients have been federally declared to be synthetic substances.  (*Id*.)

Despite being misled, plaintiff would likely repurchase the Products in the future if the Products were reformulated to be free of the allegedly unnatural ingredients.  (*Id*. at ¶ 33.) However, plaintiff will remain unable to rely on the natural representations in the future because she has no way of determining whether the Products would be free of the challenged ingredients. (*Id*.)

Plaintiff brings this case as a class action for all California residents who purchased any of the Products for personal, or household purposes.  (Compl. at ¶ 35.)  Based upon her allegations, plaintiff asserts seven causes of action, including: (i) Violation of California's Consumers Legal Remedies Act ("CLRA"); (ii) Violation of California's Unfair Competition Law ("UCL"); (iii) Violation of California's False Advertising Law ("FAL"); (iv) Breach of Express Warranty; (v) Breach of Implied Warranty; (vi) Intentional Misrepresentation; and (vii) /////

1    Breach of Quasi-Contract/Unjust Enrichment/Restitution under California Law.  (*Id.* at ¶¶ 46–

2    109.)[2]

3           On March 29, 2019 this case was removed by defendant from the Stanislaus County

4    Superior Court based on diversity jurisdiction (28 U.S.C. § 1332).  (Doc. No. 1.)  On April 18,

5    2019, defendant filed a motion to dismiss all of plaintiff's claims.  (Doc. No. 13.)  On June 4,

6    2019, plaintiff filed her opposition to the motion to dismiss.  (Doc. No. 19.)  On July 2, 2019,

7    defendant filed its reply.  (Doc. No. 21.)  On December 16, 2020, plaintiff filed a request for

8    leave to file supplemental authority.  (Doc. No. 45.)

9    **LEGAL STANDARD**

10   **A.     Motion to Dismiss Pursuant to Rule 12(b)(6)**

11          The purpose of a motion to dismiss brought pursuant to Rule 12(b)(6) is to test the legal

12   sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

13   1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

14   sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901

15   F.2d 696, 699 (9th Cir. 1990).  A claim for relief must contain "a short and plain statement of the

16   claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Though Rule 8(a)

17   does not require detailed factual allegations, a plaintiff is required to allege "enough facts to state

18   a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

19   (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  "A claim has facial plausibility when the

20   plaintiff pleads factual content that allows the court to draw the reasonable inference that the

21   defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

22          In determining whether a complaint states a claim on which relief may be granted, the

23   court accepts as true the allegations in the complaint and construes the allegations in the light

24   most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v.*

25   *United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).  It is inappropriate to assume that the plaintiff

26   "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways

27

28   [2] Defendant alleges that it no longer uses the label "All Natural" but instead uses the "Natural" label and that this change occurred prior to plaintiff's filing of this action.  (Doc. No. 21 at 7–8.)

that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

**B.  Pleading Fraud Pursuant to Rule 9(b)**

A complaint alleging fraud must also satisfy heightened pleading requirements. Fed. R. Civ. P. Rule 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). "Fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word 'fraud' is not used)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003)). "When an entire complaint, or an entire claim within a complaint, is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint or claim." *Vess*, 317 F.3d at 1107.

Under Rule 9(b), the "circumstances constituting the alleged fraud [must] be 'specific enough to give defendants notice of its particular misconduct . . . so they can defend against the charge and not just deny that they have done anything wrong.'" *Kearns*, 567 F.3d at 1124 (citing *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). To satisfy the particularity standard of Rule 9(b), the plaintiff must allege the "'who, what, when, where, and how' of the misconduct charged." *Id.* (citing *Vess*, 317 F.3d at 1106).

**ANALYSIS**[3]

**A.  Intentional Misrepresentation**

Under California law, the elements of an intentional representation claim are (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud, *i.e.*, to induce reliance;

---

[3] Defendant asks the court to invoke the primary jurisdiction doctrine and dismiss this case pending the California Department of Public Health's decision whether to incorporate the Association of American Feed Control Officials' definition of "natural" into California law. (Doc. No. 13 at 31.) As both parties point out, the court has discretion to apply this prudential doctrine. (*Id.*; *see also* Doc. No. 19 at 26.) The court does not find it judicious to defer resolution of this matter until a possible, but not certain, future action adopting a certain definition of "natural," and therefore declines to invoke the doctrine of primary jurisdiction and will instead resolve this motion on the merits.

(4) justifiable reliance; and (5) resulting damage.  *See Helo v. Bank of Am. Servicing Co.*, No. 1:14-cv-01522-LJO-JLT, 2015 WL 4673890, at *3 (E.D. Cal. Aug. 6, 2015) (citing *UMG Recording, Inc. v. Bertelsmann AG*, 479 F.3d 1078, 1096 (9th Cir. 2007)).

Defendant argues that to properly allege an intentional misrepresentation claim "it must be 'probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'"  (Doc. No. 13 at 18) (citing *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)).  Defendant cites to the decision in *Hairston v. South Beach Beverages Company*, No. CV 12-1429-JFW (DTBx), 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012) in support of the contention that whether a representation is likely to deceive is evaluated in the context of the advertisement as a whole and not based upon a single out-of-context phrase found in one component of the label.  (Doc. No. 13 at 18.)  Defendant further argues that plaintiff cannot plausibly "allege that a reasonable consumer would be deceived into believing that a product does not contain the very ingredients that are disclosed in the front-facing representation-at-issue."  (*Id*. at 19) (referring to the fact that the label on its product includes "with added vitamins, minerals & nutrients").  Defendant contends that plaintiff did not allege in her complaint that a reasonable consumer would be deceived by the added vitamins, minerals, and nutrients language and argues plaintiff cannot change her argument in response to its motion to dismiss.  (*Id*. at 20.)  Even if plaintiff could make this new argument, defendant asserts that "a reasonable consumer would not be likely to understand the label in such a strained manner."  (*Id*.)

Defendant also claims that its representation is entirely accurate because its packaging/description complies with the pet food guidelines of the Association of American Feed Control Officials ("AAFCO").  (*Id*. at 12.)  Defendant notes that processed pet food is regulated by the California Department of Public Health ("CDPH").  (*Id*. at 16.)  Defendant avers that when the CDPH reviews the common names and definitions of pet food ingredients not mentioned in the California Health and Safety Code regulations, it looks to the AAFCO for guidance.  (*Id*. at 16) (citing 17 C.C.R § 19005(m)).  According to defendant, because the AAFCO guidelines allow for heat processing, chemically synthetic additives that unavoidably occur, and some unnatural

1    vitamins and minerals, "a pet food product may . . . still be labeled as 'natural' even when

2    synthetic vitamins and minerals have been added." (*Id.* at 17.)

3         Plaintiff takes particular issue with the presence of the ingredients STPP, citric acid, and

4    lactic acid in the Products. (Comp. ¶¶ 4, 19, 25.) Defendant counters that STPP, citric acid, and

5    lactic acid all satisfy the AAFCO's definition of "natural." (Doc. No. 13 at 7.) First, defendant

6    contends that STPP is a mineral prepared by dehydration or calcination, both of which are

7    processes deemed natural by the AAFCO. (*Id.*) Second, defendant contends that citric acid is a

8    naturally occurring preservative produced by recovery from lemon or pineapple juice, by

9    mycological fermentation, and by the solvent extraction process. (*Id.*) (citing 21 C.F.R.

10   § 184.1033(a)). Third, defendant avers that lactic acid both occurs naturally in several foods and

11   can be produced either by fermentation or hydrolysis. (*Id.*) (citing 21 C.F.R. § 184.1061(a)).

12        Defendant correctly points out that to state a cognizable claim for intentional

13   misrepresentation, plaintiff must meet the heightened pleading standards of Rule 9 of the Federal

14   Rules of Civil Procedure. (Doc. No. 13 at 23) (citing *Helo*, 2015 WL 4673890, at *3). Defendant

15   argues that this heightened pleading standard also applies to plaintiff's UCL, CLRA, and FAL

16   claims because they are likewise grounded in fraud. (Doc. No. 13 at 23) (citing *Arabian v.*

17   *Organic Candy Factory*, No. 2:17-cv-05410-ODW-PLA, 2018 WL 1406608, at *3 (C.D. Cal.

18   Mar. 19, 2018)). Defendant thus concludes that its purported compliance with AAFCO

19   regulations; its disclosure of added vitamins, minerals, and nutrients; and the absence of any facts

20   to suggest intent to defraud all combine to defeat plaintiff's intentional misrepresentation claim.

21   (*Id.*)

22        In her opposition, plaintiff argues that the CDPH has not incorporated the AAFCO

23   definition of "natural" into California law. (Doc. No. 19 at 11.) Plaintiff argues that the

24   California Code of Regulations § 19005(m) does not address the term natural and "states only that

25   '[t]he common names and definitions of other ingredients used in the processing of pet foods

26   shall be those recognized in the Official Publication of Feed Control by the [AAFCO] and/or the

27   U.S. Department of Agriculture.'" (*Id.*) (quoting CCR. Tit. 17, § 19005(m)). Plaintiff argues that

28   "natural" is not another ingredient. (Doc. No. 19 at 11.) Plaintiff also contends that AAFCO's

6

1    guidelines are not an enforceable provision of California law.  (Doc. No. 19 at 12.)  Plaintiff

2    argues that even assuming the CDPH had incorporated the AAFCO definition of natural, that

3    definition excludes ingredients produced by or subject to a chemically synthetic process.  (*Id*.)

4    Plaintiff contends that the AAFCO guidelines likewise "expressly prohibit the use of the term

5    'All Natural' on a pet food label unless the product is composed entirely of natural ingredients."

6    (*Id*.)  Plaintiff asks the court to ignore defendant's allegations that STPP is a mineral.  (*Id.* at 13)

7    (citing *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018)).  Plaintiff

8    similarly asks the court to disregard defendant's arguments that citric acid and lactic acid can be

9    made naturally because finding these facts true would "ignore the well-established principle that

10   courts should accept non-conclusory factual allegations in the light most favorable to plaintiff."

11   (*Id*.) (citing *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1051 (9th Cir. 2017)).[4]

12          Plaintiff also notes that defendant bears the burden of showing that she could not plausibly

13   prove that a reasonable consumer would be deceived by the product packaging.  (*Id*.) (citing *Reid

14   v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015)).  In this regard, plaintiff argues that

15   consumers do not generally understand that added vitamins and minerals are synthetic.  (Doc. No

16   19 at 16) (citing *Grimm v. APN, Inc.*, No. SACV 17-00356 JVS (JCGx), 2017 WL 6060624, at

17   *3–4 (C.D. Cal. Nov. 20, 2017)).  Plaintiff avers that regardless of whether the use of the term

18   "All Natural" as a modifier is deceptive, "[q]uestions of how consumers interpret terms or phrases

19   are factual inquiries best suited" for resolution not on a motion to dismiss but at a later stage of

20   the litigation.  (Doc. No. 19 at 17) (citing *Hall v. Diamond Foods, Inc*., No. C-14-2148 MC, 2014

21   WL 3779012, at *3 (N.D. Cal. July 31, 2014)).

22          Finally, plaintiff argues that her allegations in support of her fraud claims satisfy Federal

23   Rule of Civil Procedure 9(b) for three reasons.  First, because "plaintiffs may aver scienter . . .

24   simply by saying scienter existed."  (Doc. No. 19 at 20) (quoting *Odom v. Microsoft Corp.*, 486

25   F.3d 541, 554 (9th Cir. 2007)).  Plaintiff contends that she has alleged defendant knew or

26   recklessly disregarded the fact that its claims of selling "natural" products were deceptive, that

27

28   ───────────────
     [4]  However, plaintiff appears to concede that the court could find citric and lactic acid to be
     natural.  (Doc. No. 19 at 14.)

                                                        7

1   defendant intended plaintiff to rely on those claims in purchasing the products, and that that is all

2   Rule 9(b) requires.  (*Id.*)  Second, plaintiff argues that she has in fact plausibly alleged a

3   misrepresentation by defendant.  (*Id.*)  Third, plaintiff asks this court to follow the holding in *Van*

4   *Mourik v. Big Heart Pet Brands, Inc.*, No. 3:17-cv-03889, 2018 WL 1116715, at *4 (N.D. Cal.

5   Mar. 1, 2018), in which that court found that an identical complaint to the one in this action

6   properly alleged the "when," "what," and "how" of the fraud claim asserted.  (*Id.*).[5]  Accordingly,

7   plaintiff argues that the allegations of her complaint are sufficient to allow defendant to prepare

8   an answer and that her fraud claims should not be dismissed.  (Doc. No. 19 at 21.)

9          In its reply, defendant contends that the CDPH recognizes AAFCO's official publication

10   as the definitive reference for pet food ingredients when not defined by California law.  (Doc. No.

11   21 at 9.)  Moreover, defendant argues that plaintiff has failed to plausibly allege that STPP, citric

12   acid, and lactic acid are not natural, accusing plaintiff of pursuing a strategy of "file first, ask

13   questions later."  (*Id.*)  Defendant also again argues that no reasonable consumer would find the

14   product label in question misleading and asks this court to find the reasoning by the district court

15   in *Hairston*, 2012 WL 1893818 to be more persuasive than the reasoning espoused in *Van*

16   *Mourik*, 2018 WL 1116715.  (Doc. No. 21 at 11.)  Ultimately, defendant asserts that courts have

17   recognized the distinction between "all natural" labels reflecting qualifying disclaimers, as the

18   labels for the Products here do, and those that do not.  (*Id.* at 12.)

19          Defendant also reiterates in its reply that plaintiff's intentional misrepresentation, UCL,

20   FAL, and CLRA claims all "sound in fraud and are subject to Rule 9(b)."  (*Id.* at 14.)  Although

21   Rule 9(b) permits knowledge and intent to be pled in general terms, defendant argues that a

22   plaintiff still must "allege sufficient underlying facts from which a court may reasonably infer

23   that a party acted with the requisite state of mind."  (*Id.*) (quoting *San Francisco Tech.., Inc. v.*

24   *Colgate-Palmolive Co.*, No. 5:10-cv-05201-JF/PSG, 2011 WL 940973, at *2 (N.D. Cal. Mar. 18,

25   /////

26   _____

27   [5] *Van Mourik v. Big Heart Pet Brands, Inc.*, No. 3:17-cv-03889, 2018 WL 1116715 (N.D. Cal.
    March 1, 2018) is a case with essentially identical factual allegations as are presented by plaintiff
    in this case, albeit by a different plaintiff, which was filed in the Northern District of California

28   and transferred to the Southern District of Texas.

2011)).  Defendant characterizes plaintiff's allegations in support of these claims as conclusory and insufficient under Rule 9(b).  (Doc. No. 21 at 14.)

In California, processed pet food is subject to California Health and Safety Code § 113025 and regulated by the CDPH.  As an initial matter, the court concludes that there is no binding definition of "natural" in this context under California law.  Although defendant correctly avers that the CDPH looks to the AAFCO for guidance regarding common definitions of pet food ingredients, plaintiff is correct that the AAFCO's guidelines are not an enforceable provision of California law.  *See* Cal. Gov. Code § 11340.5.  Regardless, even if ingredients that go through heat processing, include unavoidable chemically synthetic additives, or include some unnatural vitamins and minerals *could* be considered natural under the AAFCO guidelines, that does not mean it is always so.  In the absence of a binding definition of "natural" in this context under California law, plaintiff's complaint is not subject to dismissal at the pleading stage where the court is to construe the allegations of the complaint in the light most favorable to the plaintiff.  *See Hishon*, 467 U.S. at 73.  Likewise, the court finds plaintiff's claim that a reasonable consumer would find the label "natural" to be misleading, even with the qualifying language "with added vitamins, minerals & nutrients," to be plausible.  Even if citric acid, lactic acid, and STPP could be made naturally, here plaintiff alleges that these ingredients were not produced naturally, and the court must accept those non-conclusory factual allegations of the complaint in the light most favorable to plaintiff.  *See Friedman*, 855 F. 3d 1047; *see also Gregoria v. The Clorox Co.*, No. 17-CV-03824-PJH, 2018 WL 732673, at *4–5 (N.D. Cal. Feb. 6, 2018) (reaching a similar conclusion in the context of "naturally derived" detergent); *Organic Consumers Ass'n v. Sanderson Farms, Inc.*, No. 17-CV-03592-RS, 2018 WL 922247, at *6 (N.D. Cal. Feb. 9, 2018) (reaching a similar conclusion in the context of "natural" poultry).  The court agrees that questions regarding how consumers interpret terms or phrases on product labels are factual inquiries best suited for resolution at a later stage of the litigation and not on a motion to dismiss.  *Hall*, 2014 WL 3779012, at *3.

The court also finds that plaintiff's complaint satisfies Rule 9(b) with respect to its allegation of fraud.  As the district court in *Van Mourik* observed:

1
2
3
4
5
6
7

> "A pleading is sufficient under rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). That rule "may be relaxed as to matters within the opposing party's knowledge." *Id.* While conclusory allegations with no "particularized supporting detail" do not suffice, the 9(b) "standard does not require absolute particularity or a recital of the evidence. . .. [A] complaint need not allege 'a precise time frame,' 'describe in detail a single specific transaction' or identify the 'precise method' used to carry out the fraud." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (citing *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)) (other citations omitted).

8    2018 WL 1116715 at *4.

9    Exhibit A to the complaint in this case includes a spreadsheet containing images and

10   ingredient lists with respect to all the challenged products. (Doc. No. 1-1 at 33.) As to each of

11   those products, plaintiff identifies the alleged misleading representations with sufficient

12   particularity by producing full lists of ingredients with the allegedly non-natural ingredients in

13   bold typeface. (*Id*.) Plaintiff also alleges that defendant made the misrepresentations knowingly

14   and purposefully and that defendant was aware that some of the ingredients had been federally

15   declared to be synthetic. (*Id*. at 4, 17.) As for the "why," plaintiff alleges that defendant made

16   misrepresentations because consumers perceive all-natural foods as better and healthier. (*Id*. at

17   17.) The allegations of the complaint clearly explain why these representations are deceptive and

18   misleading. Because plaintiff has alleged the misrepresentations with sufficient particularity, she

19   meets the Rule 9(b) standard with respect to those claims. *See Van Mourik*, 2018 WL 1116715 at

20   *4.

21   Defendant makes much of the fact that plaintiff uses outdated information in her

22   complaint. Defendant argues that plaintiff's complaint cites to an old version of the Products and

23   that the current version of the label no longer uses the term "All Natural" but instead only lists the

24   Products as "Natural." (Doc. No. 21 at 7–8.) Defendant asserts that plaintiff "may not re-plead

25   her causes of action in her Opposition" to correct her complaint. (*Id*. at 8) (citing *Strome v.

26   DBMK Enters., Inc.*, No. C 14-2398 SI, 2014 WL 4437777, at *4 (N.D. Cal. Sept. 9, 2014)).

27   Defendant also contends that plaintiff did not address the statement "with added vitamins,

28   minerals, and nutrients" in her complaint and cannot post hoc justify her failure to do so, which

1    undercuts the plausibility of her claims.  (Doc. No. 21 at 8.)  Defendant's points are potentially

2    well taken in that it appears to be undisputed that defendant's Products no longer bear the "All

3    Natural" label.  However, in her complaint, plaintiff alleges she purchased her Products in 2016,

4    before defendant changed the labeling.  Thus, her claims for past damages incurred remain viable.

5    (Doc. No. 1-1 at 5.)  In any event, the court cannot consider evidence in assessing the sufficiency

6    of a complaint under Rule 12(b)(6) and will therefore not consider the alleged label changes in

7    ruling on the pending motion.  *See Khoja.*, 899 F.3d at 998.

8            For these reasons, the court will deny defendant's motion to dismiss plaintiff's intentional

9    misrepresentation cause of action.[6]

10           **B.      Plaintiff Has Standing to Seek Injunctive Relief**

11           In opposing the pending motion to dismiss, plaintiff argues that she is subject to a risk of

12   future harm sufficient to support her standing to seek injunctive relief.  (Doc. No. 19 at 22.)

13   Plaintiff seeks injunctive relief under the CLRA, the UCL, and the FAL.  Because plaintiff's

14   standing in this regard is crucial to her CLRA, UCL, and FAL claims, the court addresses the

15   standing arguments before considering the pending motion to dismiss those specific claims.

16           Defendant argues that in order to seek injunctive relief a plaintiff must show a sufficient

17   likelihood that she will be wronged in a similar way in the future and that the allegations of

18   plaintiff's complaint do not do so here.  (Doc. No. 13 at 25.)  As noted, defendant contends that

19   plaintiff seeks to enjoin defendant from using the representations "All Natural" in the future, but

20   defendant contends that it no longer employs that representation on its labels at all.  (*Id.* at 26.)

21   Accordingly, defendant reasons there is no risk that plaintiff will be wronged in a similar way in

22   the future.  Defendant also argues that plaintiff is now well aware of the basis for its "natural"

23   representations and therefore cannot claim she would be misled by those representations in the

24   future.  (Doc. No. 13 at 26) (citing *Broomfield*, 2017 WL 3838453, at *11–12).

25   /////

26   _____

27   [6]  The recent order plaintiff cites in her request for leave to file supplemental authority reached a
     nearly identical conclusion, albeit applying Second Circuit law not binding on this court.  (*See*
     Doc. No. 45) (citing *Acquard, et al. v. Big Heart Pet Brands, Inc.*, No. 19-cv-50-JLS-HKS

28   (W.D.N.Y)).

1    Plaintiff first contends that defendant's assertions regarding its ceasing usage of the "All

2  Natural" representation on the Products are not properly before the court and should not be

3  considered.  (Doc. No. 19 at 22) (citing *Khoja*, 899 F. 3d at 998).  Second, plaintiff argues that

4  under Ninth Circuit precedent "knowledge that the advertisement or label was false in the past

5  does not equate to knowledge that it will remain false in the future."  (Doc. No. 19 at 22) (citing

6  *Davidson v. Kimberly-Clark Corp.*, 889 F. 3d 956, 969 (9th Cir. 2018)).  Accordingly, plaintiff

7  asserts that the Ninth Circuit has expressly rejected defendant's position that she lacks standing

8  merely because she now knows that defendant's "natural" representations are deceptive.  (Doc.

9  No. 19 at 22.)

10    In reply, defendant claims that nothing in the decision in *Davidson* "suggests the Ninth

11  Circuit created a freestanding right to seek injunctive relief based on conduct that has ended."

12  (Doc. No. 21 at 15) (quoting *Bruton v. Gerber Prod. Co.*, 2018 WL 1009257, at *7 (N.D. Cal.

13  Feb. 13, 2018)).  Defendant argues that because it no longer uses the "All Natural" label, plaintiff

14  lacks standing and that because plaintiff alleges she would only purchase the Products in the

15  future *if* defendant reformulated them, granting her requested injunctive relief requiring a change

16  to its label would not in fact provide plaintiff relief.  (Doc. No. 21 at 15.)  Defendant urges the

17  court to dismiss plaintiff's claims for injunctive relief under the CLRA, UCL, and FAL.  The

18  court finds defendant's arguments unpersuasive on this point.

19    As the Ninth Circuit has recognized, "[a] previously deceived consumer may have

20  standing to seek an injunction against false advertising or labeling, even though the consumer

21  now knows or suspects that the advertising was false at the time of the original purchase."

22  *Davidson*, 889 F.3d at 969; *see also Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1021 n.13

23  (9th Cir. 2020).  An actionable cognizable injury exists where a plaintiff alleges that they cannot

24  rely on defendant's labeling when deciding whether to purchase products in the future.  *Davidson*,

25  889 F.3d at 970–71.  The undersigned finds that plaintiff's allegations of future harm presented in

26  the pending complaint fit squarely into the categories recognized by the Ninth Circuit.  Moreover,

27  even if defendant changed its label from reading "All Natural" to "Natural," the court does not

28  find at the motion to dismiss stage a sufficient basis upon which to conclude that all harmful

conduct has ceased.  *See, e.g.*, *Grimm v. APN, Inc.*, No. SACV 17-00356 JVS (JCGx), 2017 WL 6060624, at *3 (C.D. Cal. Nov. 20, 2017) ("At this stage, it is ambiguous whether ["Natural food for dogs with added vitamins & minerals"] represent that the added vitamins and minerals are natural or synthetic.")  The court therefore finds that plaintiff's claims for injunctive relief survive defendant's motion to dismiss.[7]

C.      **Violation of the California Legal Remedies Act ("CLRA"), Unfair Competition Law ("UCL"), and California Fair Advertising Law ("FAL")**

Claims brought under the CLRA, UCL, or the FAL are governed by the "reasonable consumer test."  *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Additionally, the California Supreme Court recognized in *Kasky v. Nike, Inc*., 27 Cal. 4th 939, 950 (2002) that California's consumer protection laws prohibit not only advertising which is false, but also that which is either actually misleading or which has a capacity, likelihood, or tendency to deceive or confuse the public.  *See Munning v. Gap, Inc.*, No. 16-cv-03804-TEH, 2016 WL 6393550, at * 4 (N.D. Cal Oct. 28, 2016).  With that in mind, the court turns to the parties' arguments regarding the sufficiency of plaintiff's claims as alleged.

1.      Violation of California's False Advertising Law ("FAL")

Defendant argues that a "plaintiff seeking equitable relief in California must establish that there is no adequate remedy at law available."  (Doc. No. 13 at 33) (quoting *Munning v. Gap, Inc.*, 238 F. Supp. 3d 1195, 1203 (N.D. Cal. 2017)).  Accordingly, defendant contends that in order to plead a cognizable UCL or FAL claim, plaintiff is required to allege facts showing that she has no adequate remedy at law.  (*Id.*) (citing *Heighley v. J.C. Penney Life Ins. CO.*, 257 F.

---

[7]  The recent order in *Acquard, et al. v. Big Heart Pet Brands, Inc.*, No. 19-cv-50-JLS-HKS (W.D.N.Y) cited by plaintiff in her request for leave to file supplemental authority found that the plaintiffs in that case lacked standing to seek injunctive relief because they would only buy a reformulated product.  (Doc. No. 45-1 at 17.)  The undersigned disagrees with that reasoning, both for the reasons expressed above and because plaintiff simply will not be able to *know* if the Products have been reformulated should their labeling continue to be misleading.  In this way, the formula (or the ingredients) and the label are tied hand in hand.  The undersigned does not find plaintiff's allegation in her complaint that she would purchase a reformulated product to be sufficiently conclusive as to deny her and the future class all standing with regard to injunctive relief.

1    Supp. 2d 1241, 1259 (C.D. Cal. 2003)).  Defendant contends that the UCL and FAL provide only

2    for equitable relief.  (*Id.*) (citing *Munning*, 238 F. Supp. 3d at 1203–04).  Defendant argues that

3    because plaintiff could seek money damages for breach of contract, breach of warranty, or

4    violation of the CLRA, she has an adequate remedy at law and may not seek equitable relief.

5    (Doc. No. 13 at 33.)

6         Plaintiff counters that defendant's argument conflicts with the plain words of Rule 8(a)(3)

7    of the Federal Rules of Civil Procedure, which allows her to plead her claims in the alternative.

8    (Doc. No. 19 at 29.)  Plaintiff also contends that defendant has not established that she has an

9    adequate remedy at law because "even if [p]laintiff successfully obtains monetary relief for

10   herself and putative class members, consumers will still be injured from [d]efendant's deceptive

11   labeling practices in the future."  (*Id.*)

12        In reply, defendant asserts that plaintiff has pleaded her damages claims jointly with her

13   equitable relief claims, and not in the alternative.  (Doc. No. 21 at 19) (citing *Grossman v. Schell*

14   *& Kampeter, Inc.*, No. 2:18-cv-02344-JAM-AC, 2019 WL 1298997, at *7 (E.D. Cal. Mar. 21,

15   2019)).  Defendant also responds to plaintiff's contention that she may not have an adequate

16   remedy at law by arguing that where the claims pleaded *may* entitle a plaintiff to a remedy at law,

17   equitable relief is unavailable.  (Doc. No. 21 at 20) (citing *Rhynes v. Stryker Corp.*, No. 10-5619

18   SC, 2011 WL 2149095, at *4 (N.D. Cal. May 31, 2011)).

19        Defendant's motion to dismiss both the FAL and the UCL claims hinges on the question

20   of whether plaintiff may request injunctive relief in addition to her claims for legal remedies.  The

21   court concludes that plaintiff may do so.  The controlling case in this circuit on this point is

22   *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020).  In *Sonner*, the Ninth Circuit

23   held that a plaintiff "must establish that she lacks an adequate remedy at law before securing

24   equitable restitution for past harm under the UCL and CLRA."  *Id.* at 844.  Although it dealt only

25   with equitable claims for *restitution* premised on past harms, the undersigned concludes that the

26   decision in *Sonner* did not "cabin the subject requirement to equitable claims for non-injunctive

27   relief."  *See IntegrityMessageBoards.com v. Facebook, Inc*., No. 18-cv-05286, 2020 WL

28   6544411, at *5 (N.D. Cal. Nov. 6, 2020) (holding that the decision in *Sonner* relied on Supreme

                                                   14

1  Court jurisprudence that did not draw any distinction among the various forms of equitable

2  relief).  As in *IntegrityMessageBoards.com*, plaintiff here lacks an adequate legal remedy for

3  future harm.  The allegations of the complaint before the court identify the misrepresentations at

4  issue, namely that "[d]efendant has falsely and deceptively labeled and advertised the Products

5  with the . . . representations: 'All Natural,' 'All Natural Dog Food,' and/or 'All Natural Cat

6  food.'"  (Compl. at ¶ 4.)  These allegations, although addressing a past wrong, provide sufficient

7  detail to support, by way of inference, an alleged practice of false advertising with respect to the

8  Products.  *See Aerojet Rocketdyne, Inc. v. Global Aerospace, Inc.*, No. 2:17-cv-01515-KJM-AC,

9  2020 WL 3893395, at *5 (E.D. Cal. July 10, 2020).  Although monetary damages may ultimately

10  fully address plaintiff's harm, at this stage of the litigation there is "an ongoing, prospective

11  nature to [plaintiff's allegations]" given her contention that she and other future purchasers will

12  continue to be misled.  *Id.*  Taken together, and viewed in the light most favorable to plaintiff, the

13  allegations of the complaint are "sufficient to suggest a likelihood of future harm amenable to

14  injunctive relief."  *Id.*; *see also IntegrityMessageBoards.com*, 2020 WL 6544411, at *7 (holding

15  that plaintiff's inability to rely on Facebook's future representations justified a claim for

16  injunctive relief because future money damages could not be proven with certainty).  Just as in

17  *IntegrityMessageBoards.com*, "the court has not certified any class . . .. Given that, the scope of

18  any class, the identities of its members, and their respective . . . purchasing practices also remain

19  unknown."  2020 WL 6544411, at *7.

20  　　　The court concludes that plaintiff may pursue her equitable claims for injunctive relief to

21  the extent they are premised on alleged future harm.  Because plaintiff both has standing to seek

22  injunctive relief and has sufficiently alleged that she has no adequate remedy at law, the court will

23  deny defendant's motion to dismiss with respect to plaintiff's FAL claim.

24  　　　　　　　2.  Violation of California's Consumers Legal Remedies Act ("CLRA")

25  　　　Defendant next argues that plaintiff has failed to comply with the notice requirements

26  mandated by the CLRA, and the court should therefore dismiss all damages claims arising from

27  plaintiff's CLRA cause of action.  (Doc. No. 13 at 33) (citing *Munning v. Gap, Inc.*, No. 16-cv-

28  03804-TEH, 2016 WL 6393550, at *4 (N.D. Cal. Oct. 28, 2016)).  Defendant cites to California

Civil Code § 1782 for the proposition that "at least 30 days prior to commencing an action for damages under the CLRA, the consumer must (1) notify the person alleged to have committed the violations, and (2) demand that the person 'correct, repair, replace or otherwise rectify the goods or services' in question." (Doc. No. 13 at 33.) Defendant asserts that a "claim for damages under the CLRA requires *strict* compliance with the notice requirements set forth in § 1782." (*Id.*) (quoting *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1196 (S.D. Cal. 2005), *aff'd*, 252 F. App'x 777 (9th Cir. 2007) (emphasis in original)). Defendant concludes that because plaintiff did not comply with the notice requirement, her CLRA claim for damages should be dismissed. (Doc. No. 13 at 34.)

Defendant misconstrues the allegations of plaintiff's complaint. Although a plaintiff seeking damages under the CLRA must provide notice to the defendant under California Civil Code § 1782(a), plaintiff's complaint clearly states that her CLRA claim is "for injunctive relief only." (Doc. No. 1-1 at 21.) CLRA claims for injunctive relief need not comply with the notice requirement. *See* Cal. Civ. Code § 1782(d) ("An action for injunctive relief brought under the specific provisions of Section 1770 may be commenced without compliance with subdivision (a)."); *see also Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 644 (2009) ("Thus, section 1782, subdivision (d) contemplated the filing of a CLRA action for injunctive relief alone, and such actions are not subject to the requirements of subdivisions (a) and (b) of notice and allowance for voluntary correction.") Because plaintiff here seeks only injunctive relief, defendant's arguments regarding the notice requirement are inapplicable. The court will deny defendant's motion to dismiss plaintiff's CLRA claim.

### 3.   Violation of California's Unfair Competition Law ("UCL")

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200 *et seq*. The three aforementioned "prongs" each maintain a distinct theory of liability and basis for relief. *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999); *see also Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007).

/////

16

a. *Fraudulent Prong*

To advance a theory of fraud under the UCL, a plaintiff must allege facts showing that reasonable members of the public are likely to be deceived by the allegedly fraudulent conduct. *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).  And "[t]o properly plead fraud with particularity under Rule 9(b), 'a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement . . ..'" *Scott v. Bluegreen Vacations Corp.*, No. 1:18-cv-649-AWI-EPG, 2018 WL 6111664, at *5 (E.D. Cal. Nov. 21, 2018) (quoting *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018)).

Defendant argues that plaintiff does not adequately allege how the "All Natural" representations are false.  (Doc. No. 13 at 27.)  Particularly, defendant argues that plaintiff has failed to sufficiently allege falsity because she never "alleges that the Products fail to meet the AAFCO guidelines on labeling pet food 'natural.'"  (*Id*.) (citing *Chuang v. Dr. Pepper Snapple Grp., Inc.*, 2017 WL 4286577, at *4 (C.D. Cal. Sept. 20, 2017)).  In short, defendant links its argument with regard to the insufficiency of the intentional misrepresentation allegations to its fraudulent prong argument.

In her opposition, plaintiff avers that "the natural representations are both false and misleading because the ingredients (including the non-vitamin ingredients challenged) are not natural."  (Doc. No. 19 at 23.)

In its reply, defendant argues that it is plaintiff's burden to plead a reasonable consumer would be misled and she has not done so.  (Doc. No. 21 at 16.)

For the same reasons expressed as to why the motion to dismiss should be denied with regard to plaintiff's intentional misrepresentation claim, the court will likewise deny defendant's motion to dismiss plaintiff's UCL claim under the fraudulent prong.

b. *Unfair Prong*

Both parties agree that California courts employ three different tests in determining whether a business practice is "unfair" under the UCL:  the balancing test, the FTC test, and the public policy test.  *See Allen v. Hyland's, Inc.*, No. CV 12-1150 DMG (MANx), 2016 WL

4402794, at *3 (C.D. Cal. Aug. 16, 2016).  The balancing test determines whether the alleged practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers and requires the court to weigh the utility of the defendant's alleged conduct against the gravity of the harm to the alleged victim.  *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010).  The FTC test draws on the definition of unfair appearing in § 5 of the Federal Trade Commission Act and requires that:  (1) the consumer injury be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided.  *Drum*, 182 Cal. App. 4th at 257.  Finally, the public policy test requires that the public policy which is a predicate to a consumer unfair competition action under the "unfair" prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions.  *Id.* at 256.

Defendant argues that plaintiff here fails to state a claim under the balancing test because plaintiff never alleges that:  "1) the Products do not function as intended; 2) she has suffered any 'substantially injurious effects' or any 'grave harm' from using the Product; 3) she used the Product at all; 4) or any specific ill-effects."  (Doc. No.13 at 28.)  Defendant also argues that plaintiff has failed to state a cognizable claim under the FTC test because she alleges an injury that she could have reasonably avoided.  (Doc. No. 13 at 28) (citing *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 839 (2006)).  Finally, defendant argues that plaintiff fails to state a cognizable claim under the public policy test because her complaint "fails to 'identify an actual policy based on a legal provision that the defendant violated.'"  (Doc. No. 13 at 28) (quoting *Hodges v. Apple Inc.*, No. 13-cv-01128-WHO, 2013 WL 4393545, at *6 (N.D. Cal. Aug. 12, 2013)).

Plaintiff argues that defendant's contention that its conduct is not unfair presents a dispute of fact that cannot be resolved by way of a motion to dismiss.  (Doc. No. 19 at 23–24) (citing *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1171 (9th Cir. 2012)).  Plaintiff also argues that she nevertheless meets all three tests under the UCL.  First, she contends that her complaint alleges that "defendant's conduct deceives consumers as to the nutritional characteristics of the Products and far outweighs any benefit to consumers."  (Doc. No. 19 at 24.)  Second, she avers

18

1   that she has met the FTC test because she alleges that she and other consumers would not have

2   purchased the Products but for the misrepresentations.  (*Id.*)  Plaintiff also contends that she could

3   not have reasonably avoided her injury because she had no way of knowing the Product was not

4   truly natural, thus she meets that aspect of the FTC test as well.  (*Id.*)  Finally, plaintiff argues that

5   defendant's conduct is unfair under the public policy test because she "tethered her UCL claim to

6   a violation of the CLRA or FAL . . . which were enacted to protect consumers from deceptive

7   advertising."  (*Id.*) (citing Cal. Civ. Code § 1760 and *In re 5-hour ENERGY Mktg. & Sales*

8   *Practices Litig.*, No. MDL 13-2438 PSG (PLAx), 2014 WL 5311272, at *26 (C.D. Cal. Sept. 4,

9   2014)).

10          In reply, defendant argues that plaintiff's reliance on the decision in *Davis* is misplaced

11   because the Ninth Circuit also stated in that case that the court would "affirm a judgment of

12   dismissal where the complaint fails to allege facts showing that a business practice is unfair."

13   (Doc. No. 21 at 16) (quoting *Davis*, 691 F. 3d at 1170–71).  Defendant reiterates that plaintiff's

14   complaint with respect to this claim does not satisfy the balancing test, the FTC test, or the public

15   policy test, because plaintiff has not adequately pleaded fraud.  (Doc. No. 21 at 16–17.)

16          The court need not decide which definition of unfair conduct should apply in assessing the

17   sufficiency of plaintiff's complaint because it concludes that what qualifies as "unfair" with

18   respect to plaintiff's UCL claim involves a question of fact and plaintiff's complaint sufficiently

19   alleges facts showing that a business practice is unfair.  *See Davis*, 691 F.3d at 1170.  Just like the

20   plaintiffs in *In re 5-hour ENERGY Mktg. & Sales Practice Litig.*, plaintiff here has alleged that

21   defendant violated the unfair prong of the UCL by making misrepresentations on the label of the

22   Products, and plaintiff tethers that claim to her FAL and CLRA claims.  2014 WL 5311272, at

23   *26.[8]  As defendant points out, plaintiff's UCL claim is therefore based on the same purported

24   conduct underlying her fraud claim because the CLRA and FAL claims must satisfy Rule 9(b).

25   (Doc. No. 21 at 17) (citing *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104–05 (N.D.

26

27   ─────────────
    [8]  The court in *In re 5-hour ENERGY Mktg. & Sales Practice Litig.* dismissed plaintiffs' UCL
    claims in that case because their CLRA and FAL claims did not satisfy Rule 9(b).  *See* 2014 WL
28   5311272, at *26.  The same is not the case here.

1    Cal. 2017)).  If plaintiff's fraud claim ultimately fails, so too might her UCL claim.  (*Id.*)

2    However, because plaintiff has sufficiently alleged cognizable fraud claims for the reasons

3    discussed above, her UCL "unfair" prong claim likewise survives the pending motion to dismiss.

4    The court will therefore deny defendant's motion to dismiss plaintiff's claims under the "unfair"

5    prong of the UCL.

6                                    c.    *Unlawful Prong*

7          "To state a claim under the unlawful prong of the UCL, a plaintiff must plead: (1) a

8    predicate violation, and (2) an accompanying economic injury caused by the violation."  *Shelton*

9    *v. Ocwen Loan Servicing*, LLC, No. 18-CV-02467-AJB-WVG, 2019 WL 4747669, at *10 (S.D.

10   Cal. Sept. 30, 2019).  "By proscribing any unlawful business practice, the UCL borrows

11   violations of other laws and treats them as unlawful practices that the unfair competition law

12   makes independently actionable."  *Alvarez v. Chevron Corp.*, 656 F.3d 925, 933 n.8 (9th Cir.

13   2011) (alterations and citations omitted).  "Virtually any law—federal, state or local—can serve

14   as a predicate for an action under [the UCL]."  *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d

15   1074, 1094 (N.D. Cal. 2017) (quoting *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th

16   700, 718 (2001)).  Where an "unlawful" UCL claim sounds in fraud, it too must meet Rule 9(b)'s

17   pleading standards.  *Hadley*, 243 F. Supp. 3d at 1094.

18         Defendant moves to dismiss plaintiff's UCL claim on the ground that it fails under the

19   unlawful prong because plaintiff fails to "allege that Defendant has violated any applicable law."

20   (Doc. No. 13 at 29.)  On this point, defendant argues first that plaintiff's reference to 58 Fed. Reg.

21   2303, 2407 (Jan. 6, 1993) is irrelevant because that regulation only applies to human food

22   products.  (*Id.*)  Second, defendant argues that plaintiff's reference to 7 C.F.R. § 205.2 likewise

23   fails to satisfy the unlawful prong because the definitions in that regulation relate only to human

24   or livestock, not pet, consumption.  (*Id.*)  Defendant also contends that plaintiff may not rely on

25   an alleged CLRA or FAL violation as the underlying unlawful act because the proof necessary to

26   establish a violation of the CLRA is the same proof that would establish a violation of the

27   unlawful prong of the UCL.  (*Id.* at 29–30) (citing *Faulk v. Sears Roebuck and Co.*, 2013 WL

28   1703378, at *10 (N.D. Cal. Apr. 19, 2013)).

1   In opposition, plaintiff asserts that she does not allege violations of 58 Fed. Reg. 2303 or 7

2   C.F.R. § 205.2 as the predicate violations of the UCL.  (Doc. No. 19 at 25.)  Rather, plaintiff

3   contends that her UCL claim is based on alleged predicate violations of the CLRA and FAL.  (*Id.*)

4   Plaintiff further contends that courts have "consistently held that the CLRA and FAL can serve as

5   predicate violations of the UCL."  (*Id.*) (citing *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d

6   1087, 1097 (N.D. Cal. 2014); *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 852 (N.D. Cal. 2018)).

7   In its reply, defendant argues only that because plaintiff's CLRA and FAL claims fail, her

8   UCL unlawful claim fails as well.  (Doc. No. 21 at 18.)

9   "[V]irtually any state, federal or local law can serve as the predicate for an action under

10   section 17200."  *People ex rel. Bill Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508, 515

11   (2002) (citing *Podolsky v. First Healthcare Corp.* 50 Cal. App. 4th 632, 647 (1996).  Just as in

12   *Zeiger*, plaintiff here has "stated claims for violations of the CLRA and FAL, so these claims may

13   serve as predicate violations for a claim under the UCL's 'unlawful' prong."  304 F. Supp. 3d at

14   852.  Other district courts in this circuit have recognized that "it is well established that a CLRA

15   violation suffices as the predicate" to a UCL "unlawful" prong claim.  *MacDonald*, 37 F. Supp.

16   3d at 1097 (citing *Kowalsky v. Hewlett-Packard Co.*, 771 F.Supp.2d 1156, 1161 (N.D. Cal.

17   2011)).  The court finds no reason to depart from those holdings and concludes that a CLRA or

18   FAL violation properly falls into the category of a state, federal, or local law for this purpose.

19   Accordingly, defendant's motion to dismiss plaintiff's UCL claim brought under the "unlawful"

20   prong will be denied.

21   **D.    Breach of Express Warranty**

22   California Commercial Code § 2313, which defines the term "express warranty," applies

23   to "transactions in goods."  *See* Cal. Com. Code § 2102; *see also* Cal. Civ. Code1791.2(a)(1)

24   (defining "express warranty" as "[a] *written statement* arising out of a sale to the consumer of a

25   consumer good pursuant to which the manufacturer, distributor, or retailer undertakes to preserve

26   or maintain the utility or performance of the consumer good or to provide compensation if there is

27   a failure in utility or performance.").  "An express warranty is a term of the parties' contract."

28   /////

21

1   *Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F.Supp.2d 962, 978 (C.D. Cal. 2014)

2   (citation omitted).

3       Defendant contends that to allege facts identifying the exact terms of the warranty, a

4   plaintiff must provide specifics about what the warranty statement was, and how and when it was

5   breached. *T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 875

6   (N.D. Cal. 2015). Moreover, defendant argues that under California Commercial Code Section

7   10215, "a representation about a product does not control if it is modified by more specific

8   language on the same label, because '[e]xact or technical specifications displace . . . general

9   language of description." (Doc. No. 13 at 21.) Defendant concludes that assuming it warranted

10   that the products were "All Natural with Added Vitamins, Minerals & Nutrients," plaintiff has

11   failed to allege facts that would establish that the products were not in conformance with that

12   warranty. (*Id.*)

13       Plaintiff argues that an express warranty claim is adequately pleaded under California law

14   when the plaintiff alleges that: (1) the seller's statement constitutes an affirmation of fact, a

15   promise, or a description of goods; (2) the statement was part of the basis of the bargain; and

16   (3) the warranty was breached. (Doc. No. 19 at 18) (citing Cal. Com. Code. § 2313(1)). Plaintiff

17   asserts she has adequately alleged all three elements in her complaint because defendant made an

18   affirmation of fact by representing each Product as "All Natural"; plaintiff relied on that

19   representation; and defendant breached the express warranty because the Products were not

20   natural. (*Id.*)

21       In reply, defendant contends that failure to plead the exact terms of the warranty defeats a

22   breach of express warranty claim and that plaintiff's claim should be dismissed here due to her

23   failure to so allege. (Doc. No. 21 at 12) (citing *Hauck v. Advanced Micro Devices, Inc.*, No. 19-

24   CV-00447-LHK, 2018 WL 5729234, at *7 (N.D. Cal. Oct. 29, 2018)).

25       Reliance "can be reasonably inferred from the tenor and totality of the allegations in the

26   complaint." *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986). Here,

27   plaintiff's complaint identified the purported warranties and plausibly alleges breach, reliance,

28   and injury. (Doc. No. 1-1 at ¶ 31) (alleging that plaintiff paid more than she otherwise would

1    have for defendant's pet food based on the identified representations).  For the reasons set forth

2    above addressing plaintiff's intentional misrepresentation claim, plaintiff has alleged a cognizable

3    breach of express warranty claim despite the label's modifying language of "added vitamins,

4    minerals and nutrients" because she has plausibly alleged that language could be interpreted to

5    mean only *natural* vitamins, minerals, and nutrients were added to the Products.  Accordingly,

6    defendant's motion to dismiss plaintiff's express warranty claim will also be denied.

7                     **E.**      **Breach of Implied Warranty**

8             Defendant argues that plaintiff's implied warranty of merchantability claim asserted under

9    California Commercial Code § 2314(2)(f) should be dismissed for three reasons.  First, defendant

10   argues that it did not breach any alleged warranty that the Products are "All Natural with Added

11   Vitamins, Minerals and Nutrients."  (Doc. No. 13 at 22.)  Second, defendant cites two district

12   court orders for the proposition that "when an implied warranty of merchantability cause of action

13   is based solely on [§ 2314(2)(f)], the claim rises and falls with express warranty claims brought

14   for the same product."  (*Id.*) (citing *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1106

15   (N.D. Cal. Mar. 21, 2017) and *Broomfield v. Craft Brew Alliance, Inc.*, 2017 WL 3838453, at *3,

16   *11 (N.D. Cal. Sept. 1, 2017)).  Thus, defendant argues, because plaintiff's express warranty

17   claim is subject to dismissal, so too is her implied warranty claim.  (Doc. No. 13 at 22.)  Third,

18   defendant argues that to assert an implied warranty claim under § 2314, a plaintiff must be in

19   vertical privity with the defendant.  (*Id.*)

20            Plaintiff responds that because she has adequately alleged her express warranty claim, her

21   implied warranty claim should likewise survive this motion to dismiss.  (Doc. No. 19 at 19)

22   (citing Cal. Com. Code § 2314(f)).  Plaintiff also argues that defendant's vertical privity argument

23   fails because three exceptions apply to her:  (1) there is an exception for warranties involving

24   "foodstuff"; (2) there is an exception when the plaintiff relied on a product's labeling; and (3)

25   there is an exception when a plaintiff is a third-party beneficiary, which plaintiff alleges she is

26   because she purchased the Products from a PetSmart store.  (Doc. No. 19 at 19.)

27            In its reply, defendant argues that none of the aforementioned exceptions apply to

28   plaintiff.  (Doc. No. 21 at 13.)  First, defendant argues that California appellate courts have not

specifically addressed the third-party beneficiary exception to the privity requirement.  (*Id.*)
Second, defendant contends that the advertising exception applies only to express warranties, not
implied warranties.  (*Id.*) (citing *Martin v. Tradewinds*, CV16-9249 PSG (MRWx), 2017 WL
1712533, at *11 (C.D. Cal. Apr. 27, 2017)).  Third, defendant contends that no authority supports
plaintiff's claim that the foodstuff exception applies to pet food.  (Doc. No. 21 at 14.)  In this
latter regard, defendant argues that the cases plaintiff cites only involve food intended for human
consumption.  (*Id.*)

The court finds plaintiff's arguments persuasive.  First, both parties agree that the implied
and express warranty claims are tied together for purposes of resolving the pending motion.
(Doc. No. 13 at 22; Doc. No. 19 at 19.)  Because the court finds that plaintiff has alleged a valid
express warranty claim, so too does it conclude that plaintiff has asserted a cognizable claim for
breach of an implied warranty.  Second, the court agrees with the reasoning set forth by the
district court in *Van Mourik* regarding vertical privity.  There, the court acknowledged there is a
vertical privity requirement, but held that it may be relaxed "'when the plaintiff relies on written
labels or advertisements of a manufacturer' . . . or when an express warranty is extended by the
manufacturer."  2018 WL 1116715, at *5 (citing *Atkinson v. Elk Corp. of Texas*, 142 Cal. App.
4th 212, 229 (2006)).  Accordingly, just as in *Van Mourik*, because the alleged representations
here are written advertisements and because plaintiff has stated a plausible claim for breach of
express warranty, the vertical privity rule does not bar plaintiff's implied warranty claim.
Defendant's motion to dismiss plaintiff's implied warranty claim will therefore also be denied.

### F.    Quasi-Contract/Unjust Enrichment/Restitution Under California Law

Plaintiffs may seek restitution on a quasi-contract theory where the defendant obtained a
benefit from the plaintiff by fraud.  *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370
(2010).  Just as it has argued that plaintiff has not sufficiently alleged a misrepresentation or
omission and therefore has not adequately pleaded fraud, defendant argues plaintiff's restitution
claim should be dismissed.  (Doc. No. 13 at 14) (citing *Rojas-Lozano v. Google, Inc.*, 159 F.
Supp. 3d 1101, 1120 (N.D. Cal. 2016)).  Defendant also argues that under California law "'there
cannot be a claim based on quasi contract where there exists between the parties a valid express

1   contract covering the same subject matter.'"  (Doc. No. 13 at 25) (quoting *Smith v. Allmax*

2   *Nutrition, Inc.*, No. 1:15-cv-00744-SAB, 2015 WL 9434768, at *9 (E.D. Cal. Dec. 24, 2015)).

3   Defendant thus contends that because plaintiff has asserted a separate claim for breach of an

4   express warranty, she cannot also bring this quasi-contract claim.

5          Plaintiff argues that the Ninth Circuit has rejected the argument that she cannot state a

6   claim for quasi-contract along with her separate claim for breach of express warranty.  (Doc. No.

7   19 at 21) (citing *Astiana v. Hain Celestial Grp., Inc.*, 783 F. 3d 753, 762 (9th Cir. 2015)).

8   Plaintiff contends that instead "Fed R. Civ. P. Rule 8(a)(3) unequivocally allows plaintiffs to

9   plead alternative claims."  (Doc. No. 19 at 21.)

10         Defendant replies that although Rule 8 allows a plaintiff to state multiple claims, "the rule

11   does not allow a plaintiff invoking state law to assert an unjust enrichment claim while also

12   alleging an express contract."  (Doc. No. 21 at 15) (citing *Smith*, 2015 WL 9434768, at *9).

13         The court agrees with defendant that Rule 8 does not allow a plaintiff invoking state law

14   to assert an unjust enrichment claim while also alleging an express contract.  *See Smith*, 2015 WL

15   9434768; *see also In re Facebook Privacy Litig.*, 791 F.Supp.2d 705, 718 (N.D. Cal. 2011) aff'd,

16   572 Fed. App'x 494 (9th Cir. 2014).  A breach of an express warranty covers the same subject

17   matter as a breach of an express contract.  *Smith*, 2015 WL 9434768, at *10.  Because plaintiff

18   may not assert a quasi-contract claim while also alleging an express warranty claim, the court will

19   grant defendant's motion to dismiss plaintiff's quasi-contract restitution claim.

20         **G.     Punitive Damages**

21         Plaintiff requests punitive damages in her prayer for relief.  (Doc. No. 1-1 at 30.)

22   Defendant moves to dismiss that punitive damages claim because "California federal courts

23   require a complaint seeking punitive damages to include facts sufficient to support its punitive

24   damages claim."  (Doc. No. 13 at 34) (citing *Young Am.'s Found. v. Napolitano*, No. 17-cv-

25   02255-MMC, 2018 WL 1947766, at *12 (N.D. Cal. Apr. 25, 2018)).  Defendant also contends

26   that punitive damages are not available under either the UCL or FAL.  (Doc. No. 13 at 34) (citing

27   *In re Wal-Mart Stores, Inc. Wage and Hour Litig.*, 505 F. Supp. 2d 609, 620 (N.D. Cal. 2007)).

28   Neither, defendant argues, are punitive damages available for breach of express warranty, breach

of implied warranty, or unjust enrichment.  (*Id.*) (citing *Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205, 212 (1991)).  Thus, defendant asserts, plaintiff cannot seek punitive damages under any of her UCL, FAL, breach of express warranty, breach of implied warranty, or unjust enrichment claims.  (Doc. No. 13 at 34–35.)  Defendant concedes that punitive damages are an available remedy under the CLRA and for intentional misrepresentation, but argues that such damages are limited to circumstances of oppression, fraud, or malice.  (Doc. No. 13 at 35) (citing Cal. Civ. Code § 3294(a)).  Defendant contends that a corporate entity cannot commit willful and malicious conduct; the oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation.  (Doc. No. 13 at 35) (citing *In re Yahoo! Inc. Customer Data Security Breach Litig.*, 313 F. Supp. 3d 1113, 1147–48 (N.D. Cal. 2018)). Accordingly, defendant argues that because plaintiff has not alleged that any officer, director, or managing agent of defendant acted with fraud, oppression, or malice, her punitive damages claims must be dismissed in their entirety.  (Doc. No. 13 at 35.)

In opposition, plaintiff argues that a request for punitive damages is not a claim and is not the proper subject of a motion to dismiss.  (Doc. No. 19 at 31) (citing *Shimy v. Wright Med. Tech., Inc.*, No. 2:14-CV-04541-CAS (RZx), 2014 WL 3694140, at *4 (C.D. Cal. July 23, 2014)). Plaintiff also contends that discovery will "reveal the identities of any responsible corporate officers, directors, or managing agents," in response to defendant's assertion that she did not properly make these allegations in her complaint.  (Doc. No. 19 at 31.)

In its reply, defendant asserts that courts routinely dismiss punitive damages claims where the plaintiff failed to plead support for such damages.  (Doc. No. 21 at 21) (citing *Anderson v. United States*, 2018 WL 4242344, at *2 (E.D. Cal. Sept. 6, 2018)).  Because plaintiff does not dispute that punitive damages are not available under the UCL, FAL, or breach of warranty, defendant argues that the court should dismiss those damages claims.  (*Id.*)  Finally, defendant argues that plaintiff cannot rely on discovery to reveal the identifies of any responsible corporate agents, but must *plead* that an officer, director, or managing agent of defendant committed an act of oppression, fraud, or malice.  (*Id.*) (citing *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, /////

313 F. Supp. 3d at 1148).  Because plaintiff failed to do so, defendant asks that this court dismiss her remaining claims for punitive damages.

Punitive damages are generally not available under the UCL or FAL.  *See In re Wal-Mart Stores, Inc. Wage and Hour Litig.*, 505 F. Supp. 2d at 620; *see also Petkevicius v. NBTY, Inc.*, No.: 3:14-cv-02616-CAB-(RBB), 2017 WL 1113295, at *10 (S.D. Cal. Mar. 24, 2017). Moreover, punitive damages are not available under California law for breach of express or implied warranty.  *See Goel v. Coalition America Holding Company Inc*, No. CV 11-2349 GAF (Ex), 2011 WL 13128300, at *9 (C.D. Cal. July 5, 2011) (citing *Major v. W. Home Ins. Co.*, 169 Cal. App. 4th 1197, 1224 (2009)).  Plaintiff appears to concede these points.  Accordingly, plaintiff's only potential punitive damages claims come under her intentional misrepresentation claim and her CLRA claim.

First, because plaintiff's CLRA claim seeks only injunctive relief, any claim for punitive damages in connection with that claim is moot.  Second, defendant correctly argues that plaintiff has failed to identify any officer, director, or managing agent who committed an act of oppression, fraud, or malice in the allegations of her complaint and therefore cannot seek punitive damages in connection with her intentional misrepresentation claim.  Where a plaintiff proves that the defendant has been guilty of fraud or malice, that plaintiff may recover punitive damages. Cal. Civ. Code § 3294(a).  However, "a corporate entity cannot commit willful and malicious conduct; instead, 'the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation.'"  *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d at 1148; *see also Taiwan Semiconductor Mfg. Co. v. Tela Innovations, Inc.*, No. 14-CV-00362-BLF, 2014 WL 3705350, at *6 (N.D. Cal. July 24, 2014) ("[A] company simply cannot commit willful and malicious conduct–only an individual can.")

Accordingly, plaintiff's claims for punitive damages are dismissed with leave to amend only in connection with her intentional misrepresentation claim.

/////

/////

27

**CONCLUSION**

For the reasons set forth above,

1.  Defendant's motion to dismiss (Doc. No. 13) is granted in part and denied in part as follows:

    a.  Plaintiff's seventh cause of action for breach of quasi-contract is dismissed without leave to amend;

    b.  Plaintiff's requests for punitive damages are stricken with leave to amend only in connection with her intentional misrepresentation claim;

2.  This action now proceeds on plaintiff's intentional misrepresentation, express warranty, implied warranty, CLRA, UCL, and FAL claims; and

3.  Any amended complaint shall be filed within twenty-one (21) days from the issuance of this order.

IT IS SO ORDERED.

Dated:   **December 30, 2020**

_____
UNITED STATES DISTRICT JUDGE

1